UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

LARRY SEAMAN                              CIVIL ACTION

VERSUS                                    NO: 07-3354

SEACOR MARINE LLC                         SECTION: "A" (1)


                          **ORDER AND REASONS**

   Before the Court is a **Motion for Summary Judgment (Rec. Doc. 100)** and a **Motion to Exclude Dr. Perri Prellop (Rec. Doc. 102)** filed by defendant Seacor Marine LLC ("Seacor"). Plaintiff, Larry Seaman, opposes the motions. The motions, set for hearing on May 28, 2008, are before the Court on the briefs without oral argument. For the reasons that follow, both motions are GRANTED.

**I. BACKGROUND**

   Larry Seaman ("Plaintiff") brought this suit against his former employer, defendant Seacor Marine LLC ("Seacor"), for exposure injuries that he claims to have sustained while working for Seacor from 1982 until March 2003. Plaintiff, who was employed as the captain of several vessels, is suing Seacor under the Jones Act and general maritime law. Plaintiff's status as a seaman is not contested.

   Plaintiff alleges that he inhaled or was exposed to "a host of hazardous and toxic chemicals including drilling mud, caustic soda, barium sulfate, Barite, ammonia, muratic acid, and others"

                                    1

while employed aboard Seacor's vessels. (Comp. ¶ 7). Plaintiff contends that he developed bladder cancer as a result of these exposures. (Comp. ¶ 8).

Seacor moves for summary judgment arguing that Plaintiff cannot prove that exposure to chemicals during his employment with Seacor caused his bladder cancer. Seacor simultaneously moves to exclude Plaintiff's experts, Dr. Perri Prellop and John Edgar.

## II. DISCUSSION

In support of its motion for summary judgment, Seacor argues that Plaintiff cannot prove that any of the chemicals to which he was exposed during his employment with Seacor were the cause of his bladder cancer. Seacor points out that none of the chemicals alleged in the complaint are linked to bladder cancer. Plaintiff's experts discussed Ferox and diesel exhaust but according to Seacor the experts did not provide any reliable indication of what levels of exposure are necessary to cause bladder cancer in humans or whether Plaintiff was exposed to the chemicals at sufficient levels.

In opposition, Plaintiff contends that Seacor is holding out on discovery and that Seacor's motion is premature because an IME by Dr. Richard Airhart has yet to be conducted.[1] Plaintiff also

---

[1] Dr. Richard Airhart examined Plaintiff on May 27, 2008, and his report is now in the record as an attachment to Plaintiff's motion to limit his testimony. (Rec. Doc. 165).

contends that Seacor's motion is premised on its "unfounded" motions to strike Plaintiff's two experts.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

In a toxic tort suit such as this one, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation. <u>Knight v. Kirby Inland Marine, Inc.</u>, 482 F.3d 347, 351 (5TH Cir. 2007). General causation is whether a substance is capable of causing a particular injury or condition in the general population. <u>Id.</u> (quoting <u>Merrell Dow Pharm., Inc. v. Havner</u>, 953 S.W.2d 706 (Tex. 1997)). Specific causation is whether a substance caused a particular individual's injury. <u>Id.</u> In a toxic tort case the Court must determine whether there is evidence of general causation. If there is admissible evidence of general causation then the court must determine if there is admissible specific causation evidence. <u>Id.</u>

Plaintiff's sole medical expert is Dr. Perri Prellop.[2] In her report she states that she reviewed the material safety data sheets ("MSDS") for Ferox which contains aromatic hydrocarbons known to be human carinogens. (Rec. Doc. 102, Exh. 1). Dr.

---

[2] Seacor challenged Dr. Prellop's qualifications to render an opinion as to causation in this case. Dr. Prellop has never testified as an expert. Dr. Prellop is a radiation oncologist and she completed her residency in that field in June 2006. Radiation oncology is a specialty in which therapeutic radiation is used to treat cancer, typically following surgery. Dr. Prellop does not specialize in any one type of cancer treatment but rather treats all kinds of cancer. In her two years of practice she has treated approximately three patients who had been diagnosed with bladder cancer, (Rec. Doc. 155, Exh. 1, at 14), but she never treated Plaintiff. It is clear from Dr. Prellop's deposition that she has no specific expertise in the causes or diagnosis of bladder cancer.

Prellop states that polycyclic aromatic hydrocarbons such as contained in diesel exhaust have been causally linked to bladder cancer and she cites two journal articles in support of that contention. (Id.). Dr. Prellop states that it was her understanding that Plaintiff was exposed to diesel exhaust and exposure to Ferox at least once a week, twenty-six weeks per year, over more than a decade. (Id.). Dr. Prellop's sole opinion as to causation in this case is that because Plaintiff had no risk factors for bladder cancer, other than his gender, then his "history of occupational exposure to diesel exhaust and chemicals including aromatic hydrocarbons *put him at an increased risk for bladder cancer*." (Id. (emphasis added)). Dr. Prellop clarified, however, that "we could never be certain that these occupational exposures were the definite cause of Mr. Seaman's bladder cancer but I have no information suggesting that  Mr. Seaman's cancer was caused by other external agents." (Id.).

A copy of Dr. Prellop's deposition was filed with Seacor's reply memorandum and the contents of that deposition are illuminating.  Dr. Prellop never examined the Plaintiff or even talked to him before rendering her report.  Dr. Prellop read Plaintiff's deposition, reviewed his medical records, and read some journal articles along with the MSDS provided to her.  Dr. Prellop stated that Plaintiff's counsel told her that Plaintiff had been exposed to Ferox and diesel exhaust, and that this

5

information came from another employee.  (Rec. Doc. 155, Exh. 1 at 38).  Information regarding exposure to these substances was not in anything that Dr. Prellop read.  Dr. Prellop's only knowledge about Ferox was gleaned from the MSDS that Plaintiff's counsel gave her and what she found when she Googled it on the internet.  (Id. at 40-41).  Dr. Prellop clarified that she knew nothing about Plaintiff's use of Ferox in the workplace other than counsel's statement to her that Plaintiff had been exposed at least once a week, twenty-six weeks per year, for over a decade.  (Id. at 41).  Dr. Prellop did not know the chemical makeup of diesel exhaust nor did she have any information about Plaintiff's exposure to that substance.  (Id. at 56).  As in her report, Dr. Prellop's strongest statement regarding causation was that in her opinion Plaintiff would be at an increased risk of developing bladder cancer due to the chemicals to which he was exposed.  (Id. at 70).  Dr. Prellop candidly admitted that an increased risk does not mean that the exposures caused the cancer.  (Id. at 100).

Plaintiff's other expert is John Edgar, an industrial hygienist who opined that the overall health and safety program during Plaintiff's employment was not adequate.  (Rec. Doc. 101, Exh. 1).  Mr. Edgar's testimony was not directed at medical causation, nor would he be qualified to render such an opinion in this case.  As with Dr. Prellop, Mr. Edgar did not have specific

information regarding exposure levels to hazardous chemicals. Mr. Edgar's opinions were based solely on Plaintiff's deposition and the MSDS's that he reviewed.

As mentioned above, Plaintiff was examined by Dr. Richard Airhart, Chief of Urology at East Jefferson General Hospital. Dr. Airhart noted that there is epidemiologic evidence linking bladder cancer to certain metals, chlorination by-products, aromatic amines, petrochemicals and ionizing radiation. (Rec. Doc. 165, Exh. 1). Dr. Airhart opined that after an extensive review of the published literature regarding bladder cancer with environmental and occupational etiologies, he was unable to find any direct carcinogen for Plaintiff's cancer based on the evidence in his records.[3] (Rec. Doc. 165). Dr. Airhart expressed concern that exposure to second-hand smoke, which was a risk factor for Plaintiff, could have played a part in his developing cancer.

The Court is persuaded that Plaintiff's evidence is insufficient to create in issue of fact as to causation. First, unlike many cases where an expert testifies affirmatively as to

---

[3] The Court does not have copies of Plaintiff's medical records or of his deposition but it is clear from the other exhibits and the memos that Plaintiff never mentioned exposure to Ferox or to diesel exhaust in his deposition and that those substances are not mentioned in any of his records. Attached to Plaintiff's opposition to the motion for summary judgment are declarations from three of Plaintiff's former co-workers who state that Plaintiff worked with Ferox and diesel exhaust during the time that they worked with him. (Rec. Doc. 113).

causation but cannot support that opinion with scientific evidence, see e.g., Allen v. Penn. Eng'r Corp., 102 F.3d 194 (5th Cir. 1996); Knight v. Kirby Inland Marine, Inc., 482 F.3d 347 (5th Cir. 2007), Dr. Prellop did not testify that Plaintiff's exposure to hazardous chemicals caused his bladder cancer. Dr. Prellop's testimony was that in her opinion, based on her understanding of the facts and what she had read about Ferox and diesel exhaust, that Plaintiff was at an increased risk for bladder cancer. This was Dr. Prellop's strongest opinion regarding causation.

    Second, it is clear from reading Dr. Prellop's deposition that her opinion cannot withstand attack under the rigorous standards imposed in this circuit. In Allen, supra, the Fifth Circuit upheld the district court's ruling that the plaintiffs' experts' opinions were inadmissible for lack of sufficient scientific grounding. 102 F.2d at 195. In Allen the plaintiffs were claiming that Walter Allen's brain cancer was caused by exposure to ethylene oxide ("EtO") during his employment with the defendant. Plaintiffs' experts opined that this exposure caused his brain cancer. In upholding the district court's decision to exclude the experts under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), the Fifth Circuit noted that there were no scientific studies that suggested a link between human brain cancer and EtO exposure. Id. at 197. Although some evidence

suggested a connection between EtO exposure and human lymphatic and hematopoietic cancers the court rejected evidence of those cancers as being probative of brain cancer specifically.  Id. at 198.  Plaintiffs' experts had some studies "suggestive" of a link between EtO exposure and brain cancer but the court found that the experts were unable to show how "suggestiveness" would create a causal connection.  Id.  The court found that none of the scientific data upon which the experts were relying to claim that Allen's brain cancer was caused by EtO exposure furnished a scientifically valid basis for their conclusions.  Id. at 198.

Moreover, the Fifth Circuit also found that the facts upon which the experts were relying to render their opinions were insufficient to support their conclusions as to causation.  Id. at 198.  The court noted that there was no direct evidence of the level of Allen's exposure to EtO.  One of the experts had relied upon co-worker affidavits and extrapolations based on conditions in hospitals during the 1970s.  The experts involved actually knew very little about Allen's occupational exposure to EtO.  The Fifth Circuit explained that scientific knowledge of the harmful level of exposure to a chemical plus knowledge that the plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case.  Id. at 199 (citing Wright v. Willamette Indus., Inc., 91 F.3d 1105 (8th Cir. 1996)).  The Fifth Circuit found that the experts' background

information regarding Allen's exposure was so lacking that their opinions as to causation were really mere guesswork. Id. at 199.

Similarly, in Knight, supra, Knight was diagnosed with Hodgkins lymphoma which he claimed was caused by his exposure to benzene during his employment with the defendant. His co-plaintiff, Ingerman, claimed that the same exposure caused his bladder cancer. Plaintiffs' expert was prepared to testify at trial that benzene exposure was the cause of their cancers. The district court excluded the expert under Daubert after finding deficiencies in the studies and articles upon which the expert relied, and the Fifth Circuit affirmed. Knight, 482 F.3d at 351. In scrutinizing the actions taken by the district court the Fifth Circuit noted that the fundamental question was whether the chemicals involved and the type of exposures the plaintiffs experienced cause the types of cancers at issue, i.e., general causation. Id. at 352. The court noted that even though the expert had relied upon over fifty studies for his opinion, none gave an adequate basis for his opinions that the types of chemicals that the plaintiffs were exposed to could cause their particular types of injuries in the general population. Id. at 355.

In contrast, in Curtis v. M&S Petroleum, Inc., the Fifth Circuit found that the district court erred when it excluded plaintiffs' expert who was prepared to testify that their health

problems were caused by exposure to benzene at defendant's refinery.  174 F.3d 661 (5th Cir. 1999)  In that case plaintiffs began experiencing classic symptoms of overexposure to benzene almost immediately after their employer began processing a new chemical known to contain benzene.  After the onset of the symptoms defendant's safety manager procured equipment to test for benzene levels in the air.  Those tests showed that the air in the refinery contained at least ten times the acceptable level as provided by the MSDS and OSHA regulations.  The district court had excluded the expert after finding that his opinion as to specific causation was unreliable because he lacked sufficient certainty as to the amount of benzene to which the plaintiffs had been exposed.

The Fifth Circuit explained that the plaintiffs were not required to demonstrate the precise level of benzene to which they were exposed and that the expert's assumption that the plaintiffs were exposed to levels several hundred times the acceptable limit was reasonable given the facts that he had.  <u>Id.</u> at 671.  The expert had ample evidence to reach his conclusion including the severity and breadth of the symptoms, the air results obtained by the safety manager, and the inadequacies of the equipment involved to properly process a chemical like benzene.

Cases like <u>Allen</u> and <u>Knight</u> on the one hand, and <u>Curtis</u> on

11

the other, demonstrate that Prellop's opinion is insufficient as a matter of law to establish causation or to be admissible for that matter.  Prellop notes in her report that Ferox contains benzene and aromatic hydrocarbons which are known to be human carcinogens.  Nothing in Prellop's report or in her testimony provides a scientific basis for establishing either general causation or specific causation with respect to Ferox and bladder cancer.  The MSDS for Ferox does not mention bladder cancer or any other type of cancer as a potential effect of exposure to this chemical.  (Rec. Doc. 113, Exh. A).  Even if certain hydrocarbons found in Ferox are known to be human carcinogens, Allen and Knight make clear that general causation with respect to other cancers is not sufficient proof of causation as to bladder cancer.  Further, Dr. Prellop admitted in her deposition that she new nothing specific about Plaintiff's exposure to Ferox.  (Rec. Doc. 155, Exh. 1 at 44).  Dr. Prellop conceded that much of the factual information that she was lacking would be important to determining whether exposure would be likely to result in illness.  (Id. at 52).

Prellop's causation opinion regarding diesel exhaust is sorely lacking because she possessed virtually no factual information about Plaintiff's levels of exposure to that substance when she issued her report on March 26, 2008.  Dr. Prellop knew nothing about the chemical makeup of diesel exhaust

12

and she knew nothing about Plaintiff's occupational history with diesel exhaust.  (Id. at 56).  Dr. Prellop's causation opinion with respect to diesel exhaust was premised solely on the fact that she read two journal articles that linked bladder cancer to diesel exhaust and that Plaintiff's counsel told her to assume exposure of at least "once a week, twenty-six weeks per year, over more than a decade."  Such an assumption, which provides no facts upon which Dr. Prellop could have possibly surmised exposure levels, rendered her causation opinion mere guesswork.  What's more her report and deposition testimony do not discuss the studies upon which the journal articles were based.  As such Dr. Prellop's opinion is neither factually supported nor scientifically reliable.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Exclude Dr. Perri Prellop (Rec. Doc. 102)** filed by defendant Seacor Marine LLC is **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 100)** filed by defendant Seacor Marine LLC is **GRANTED.** Plaintiff's complaint is dismissed.

June 30, 2008

_____<br>
JAY C. ZAINEY<br>
UNITED STATES DISTRICT JUDGE